## JOHN L. SMITH *v.* GEORGE COFRAN.

SAN FRANCISCO STREET IMPROVEMENTS—ASSESSMENT FOR—BY WHOM MADE.—By the legislative Acts of 1862 and 1863, concerning street improvements in San Francisco, it is made the duty of the Superintendent of Streets, in the first instance, to make the assessment for street improvements, and deliver the same, with a warrant attached, to the contractor, authorizing him to collect the money from the owners of the lots liable therefor.

IDEM—REMEDY FOR INCORRECT OR ILLEGAL ASSESSMENT.—By the provisions of said Acts, the assessment for street improvements and the warrant for the collection of the money from the owners of the lots, chargeable therefor, are required to be put in the hands of the contractor, who then has fifteen days from the date of the warrant within which to examine it, and if found in any respect to be incorrect or illegal, it is made his duty to apply to the Board of Supervisors, by appeal, to have it corrected and made legal.

IDEM.— This power of correction conferred on the Board of Supervisors extends to a case where an assessment had been made by the Superintendent against a person not then living, and not to the owner of the lot, or unknown owners, and was, therefore, illegal and void.

IDEM.—Said statutes make it the duty of the contractor, if he have any objections to the assessment, made by the Superintendent of Streets, for incorrectness or illegality therein, to appeal to the Board of Supervisors for their correction; and if he fails to avail himself of this means of protection afforded him by law, in case the assessment be incorrect or void, it is as much his own neglect as of the Superintendent of Streets, and he cannot hold the latter responsible in damages for the result.

*On Petition for Rehearing :*

LEGALITY OF STREET ASSESSMENTS.—To render an assessment for street improvements valid, the various acts prescribed by the statutes must, in all essential particulars, be strictly performed. Among other essential things, the statute requires the assessment to show the name of the owner of each lot or portion of a lot, if known to the Superintendent making such assessment ; and if unknown to him, the word " unknown " shall be written opposite the number of the lot. There is no authority for making an assessment strictly *in rem* without reference to the owners of lots, either known or unknown, nor without showing a compliance with said requirement in respect to the names of lot owners ; and any lot, the owner of which is not designated in the assessment either by name or as " unknown," will be unaffected by it, as will, also, the owner himself, because not made a party to the assessment.

IDEM.—With respect to such owner, not made a party to the assessment, it is no assessment ; and this, whether as, in case no appeal be taken, the failure to make the proper entry of his name, or of the word " unknown " on the assessment was the neglect alone of the Superintendent of Streets ; or in case of such appeal, of the Board of Supervisors. In either case, such owner and his property are absolutely unaffected by the assessment, and he is under no obligation to take any steps, by appeal or otherwise, to avoid incurring personal liability or the incumbrance of his property by way of lien for such assessment.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

To the complaint of the plaintiff, filed in this cause, a demurrer was interposed by defendant on the ground that the facts therein stated did not constitute a cause of action. The demurrer was sustained by the Court below, and judgment final thereon entered for defendant, and plaintiff appealed therefrom to this Court.

The other facts are sufficiently stated in the opinion of the Court.

*Sharpstein & Hastings,* for Appellant, argued:

That the act of the respondent, as Superintendent of Streets, in making the assessment in question, was purely ministerial, and therefore he is liable to plaintiff for his failure to comply with the requirements of the law, whereby the assessment was rendered illegal, and resulted in the loss to plaintiff of the amount of the assessment to Davis' property; and cited *Smith* v. *Davis,* 30 Cal. 587; *Yates* v. *Lansing,* 5 Johns. 297; *Weaver* v. *Devendorf,* 3 Denio, 117; *Emery* v. *Bradford,* 29 Cal. 75; *Mygatt* v. *Washburn,* 15 N. Y. (1 Smith) 316; *The People* v. *The Supervisors of Chenango Co.,* 1 Kern. 573; *Freeman* v. *Kenny,* 15 Pick. 44; *Bassett* v. *Porter,* 4 Cush. 494; *Dickinson* v. *Billings,* 4 Gray, 42; *Adsit* v. *Brady,* 4 Hill, 630; *Wilson* v. *The Mayor of New York,* 1 Denio, 599; *The Rochester White Lead Co.* v. *The City of Rochester,* 3 Comst. 466; *Tracy* v. *Swartwout,* 10 Pet. 94; and *Brown* v. *Lester,* 13 S. & M. (Miss.) 392.

They further argued that the acts, resulting in the defects or illegality of an assessment, from which a party aggrieved must appeal to the Board of Supervisors, in order to save his legal rights, are of a *judicial* character solely, and such as the Board may make valid by affirming, and become *res adjudicata* when passed on by the Board; that plaintiff did not, therefore, fail in his duty in not appealing to the Board of Supervisors, because the defects in the assessment, caused by the neglect of duty on the part of the respondent, complained of, being a failure to perform a ministerial duty, the Board would have been powerless to remedy the defects in the assessment in question on appeal; and cited *Emery* v. *Bradford,* 29 Cal. 86.

As to the general rules governing the liability of officers, appellant's counsel cited Bac. Abr., art. "Office and Officers," *o,* and cases there cited; *Lick* v. *Madden,* 25 Cal. 209.

*C. H. Parker,* for Respondent.

I. The act of respondent complained of is a judicial or quasi-judicial act. (*Weaver* v. *Devendorf*, 3 Denio, 117; *Vail* v. *Owen*, 19 Barb. 22; *Brown* v. *Smith*, 24 Barb. 419; *Hill* v. *Sellick*, 21 Barb. 207; 29 Cal. 85; *Griffith* v. *Follett*, 20 Barb. 629.)

No private action will lie against an Overseer or Commissioner of Highways for *neglect* to keep the public bridges in repair (*Bartlett* v. *Crozier*, 17 John. 451;) nor would it at common law. (*Mower* v. *Leicester*, 9 Mass. 247, and 23 Pick. 226.) The neglect complained of must be *willful* or *malicious*. There is no such allegation in the complaint; mere negligence, however gross, can never be equivalent to malice. (*Morse* v. *The Auburn and Syracuse R. R. Co.*, 10 Barb. 621.)

The making of an assessment, as provided for by section nine, page three hundred and ninety-seven, statutes of 1862, is a quasi-judicial act; it is not a "*purely* ministerial" act.

II. The remedy by appeal to the Board *is exclusive of all other remedies*, on the well settled principle that where the right and the remedy are given by statute, the remedy provided by statute can alone be pursued. (7 Cal. 129; 6 Cal. 42; 3 Cal. 243; 5 Cal. 195–210; 9 Cal. 267; Smith on Statutes, Secs. 661, 667.)

III. All parties interested must take notice of the records and proceedings of the Board and Superintendent. They are public records. (24 Barb. 427; Sec. 19 of said Act.) "The only thing for the contractors to look to is, to see that the proceedings are all regular." (*Emery* v. *Bradford*, 29 Cal. 84.)

IV. The decisions made by the Board concerning the subject matter of street improvements, in pursuance of a power vested in them, etc., is final and *conclusive*. (*Emery* v. *Bradford*, 29 Cal. 87, and cases there cited.)

By the Court, SAWYER, J.:

In *Smith* v. *Davis*, 30 Cal. 537, we held that the street assessment then and now in question created no charge against Davis, the owner of the land, or the land, because made against another party not then living, and not against the owner, or unknown owners, as required by the statute. The facts sufficiently appear in the opinion in that case.

Smith, the plaintiff in the former action, now sues to recover the amount of the assessment from the defendant, Cofran, the Superintendent of Streets for the City of San Francisco, who made the assessment, on the ground that it was his duty, under the statute, to state in the assessment the name of the true owner, if known, and if not known, to designate him as "unknown," and that in consequence of his neglect to name the true owner, or designate him as unknown, the assessment was void, and the plaintiff lost that portion of the sum due him apportioned to the lot sought to be charged.

Under the view we take, it will be unnecessary to determine whether the making of the assessment as a whole, or the particular act of stating in the assessment the name of the owner taken by itself, is purely a ministerial act, or wholly or partly judicial in its character. If the Superintendent erred in this particular, the Act itself, under which the proceeding was had, provides a remedy for correcting the error.

The assessment is made by the Superintendent and delivered to the contractor, with a warrant attached, authorizing him to collect the money. (Laws 1862, p. 397, Secs. 9, 10.) "The * * * contractor or his assigns," aggrieved "by any acts or determination of the Superintendent in relation thereto, or having, or making any objection to the *correctness or legality* of the assessment, shall within fifteen days after the date of the warrant appeal to the Board of Supervisors," etc., and "the said Board may correct, alter, or modify said

assessment in such manner as to them shall seem just, and may instruct and direct the Superintendent to correct said warrant, *assessment* or diagram *in any particular*, and to make and issue a *new warrant, assessment and diagram to conform to the decisions* of said Board in relation thereto, at their option." (Laws 1863, p. 530, Sec. 12.) Under these provisions of the statute, the assessment and warrant, after having been completed by the Superintendent, are put into the hands of the contractor, and he has fifteen days from the date of the warrant within which to examine it, and if found in any respect to be incorrect or illegal, to apply to the Board of Supervisors by appeal to have it corrected and made legal. The authority to correct, we think, clearly extends to defects of the kind in question.

All the means open to the Superintendent for determining the correctness and legality of the assessment and warrant are equally open to the contractor, and an opportunity is afforded to examine the proceedings, and apply for correction if found to be incorrect or illegal. Moreover, as we have said, it is provided that the "contractor * * * having or making any objection to the correctness or legality of the assessment * * * *shall* * * * appeal to the Board of Supervisors," etc. Thus if he has objections of the kind in question, he not only has an opportunity, but it is made his duty, to have them obviated in the mode prescribed. If he fails to avail himself of the means of protection afforded by the law, the loss in consequence of defects of the kind under consideration results as much from his own negligence, as from that of the Superintendent. We are of opinion.that the remedy for such defects is the one prescribed by the statute, and that the contractor cannot neglect to avail himself of the remedy provided, and then hold the officer liable for the result. The cases cited by appellant are of an entirely different complexion.

Judgment affirmed.

By the Court, Sawyer, J., on petition for rehearing:

To render an assessment for street improvements valid, the various acts prescribed by the statutes must, in all essential particulars, be strictly performed. This principle is so well settled everywhere that it is unnecessary to cite authorities. Section nine of the Act, which provides for making street improvements in San Francisco, as amended in 1862 (Laws 1862, p. 397), prescribes what an assessment shall show; and among other things, it "shall show * * * the name of the owner of each lot or portion of a lot, (if known to the Superintendent,) if unknown, the word 'unknown' shall be written opposite the number of the lot," etc. There is no authority for making an assessment, that does not embrace these essentials. There is no authority to make an assessment strictly *in rem* without reference to owners, either known or unknown, or an assessment that shall affect the interest of any party, unless designated in the assessment by name, or, if unknown, it be so expressly stated. This is a part of the mode prescribed. After the assessment is made, a warrant is to be issued upon it, and "said warrant, assessment and diagram shall be recorded. When so recorded the several amounts assessed shall be a lien," etc. (Sec. 10.) Now, it is "*said* * * * *assessment*"—that is to say, an assessment that shall show the name of the owner, if known, or, if unknown, shall so state—and no other, that shall, upon being recorded, "be a lien." "The contractor, or his assigns, shall call upon the persons *so* assessed * * * if they can conveniently be found, and demand payment of the amount assessed to each." (Sec. 12.) How assessed? "*So* assessed"—that is to say, in the manner before stated. Whenever the persons so assessed, or their agents, cannot conveniently be found, or whenever the name of the owner of the lot is stated as "unknown" in the assessment, "the said contractor, his agent or assigns, shall publicly demand payment on the premises assessed." (Sec. 11.) The idea before expressed

is carried out in this provision. All these provisions refer to the persons " so assessed," and none others. There are only two classes of cases in an assessment known to the statute : those where the parties are assessed as owners by name, and those where " the name of the owner of the lot is stated as unknown "—not is unknown, merely, but is so stated in the assessment. A demand must always be made in both these cases, either personally, or upon the lot, depending upon the circumstances prescribed—but there is no provision for demand upon anybody else—upon anybody whose name is not in the assessment, or stated therein to be unknown ; and, for the reason, no doubt, that the statute does not contemplate that anybody else will be affected. Nobody, except the person named as owner, is a party to the assessment at all, unless the owner is stated as unknown, and one not a party to the assessment in one of the modes designated, is in no way affected by it. As to him, there is not an erroneous, or irregular assessment, merely, but there is no way in which a demand is authorized to be made upon anybody not designated in the assessment in one of the modes indicated. The warrant must in all cases be returned within a specified time with a return indorsed thereon, verified by oath, showing the nature and character of the demand. (Sec. 11.) This is a part of the proceeding prescribed : " The said warrant, assessment, and diagram, with the affidavit of demand and nonpayment, shall be *prima facie* evidence of such indebtedness, and of the right of the plaintiff to recover in the action." (Sec. 13.) This is the only evidence recognized for proving the indebtedness. The said warrant, assessment, etc., refer to the proceedings already cited. The warrant and assessment are not evidence without a demand, and an affidavit showing it. And the demand can only be made under the precise circumstances prescribed, and that is, when the owner is named, or when he is stated to be unknown. It is perfectly apparent that no such record, demand, return, etc., as is prescribed by the statute as the

evidence of indebtedness, or of a lien, can possibly be made against an owner, who is not designated in the assessment by name, or whose name is not stated to be unknown. The proceeding does not affect such owner, because he is, in no manner whatever, made a party to it. And this is true, whether the assessment was made by the Superintendent and there was no appeal, or whether, on appeal, the Board of Supervisors have neglected to cause the name of the owner to be inserted, if known, or stated as unknown, if such is the fact. In the former case, the determination of the Superintendent, and in the latter, of the Board of Supervisors, is conclusive as to the matters embraced in the assessment. But conclusive or otherwise, those only are affected who have been made parties to the assessment in one of the modes prescribed. Either the Superintendent, or the Board on appeal by a party aggrieved, might make the owner a party, and thereby make an assessment against him in one of the modes prescribed; but until this is done, there is no assessment against him, and he is not affected.

It is contended that Davis might have appealed, and he was therefore bound to appeal, and in default of pursuing that remedy, the assessment is good against him. This would be true if he had been assessed, but the difficulty is he was not. An "owner, * * * whether named in the assessment or not, * * * feeling aggrieved by any of the acts or determinations of the Superintendent in relation thereto, or having or making any objection to the correctness or legality of the assessment, shall, within thirty-five days after the date of the warrant, appeal," etc. This provision has full effect when limited to owners made parties in one of the modes prescribed; that is to say, by naming the owner, or designating him as unknown—for, in the latter case, he is not "named in the assessment." An assessment against Smith is not an assessment against Jones. An assessment against Smith may be valid as to any interest he may have in the subject matter, and everybody else who is a party to it, while it in no way affects Jones, or others not

parties to it.   Suppose an assessment should be made against Smith in respect to a lot owned by Jones, and in which Smith had no interest whatever, and a judgment for the amount should afterwards be recovered in a suit against Smith alone ; no lawyer would be bold enough to maintain that Jones would be affected by the judgment, or that the judgment would be admissible in evidence against Jones in another suit, brought against him on the judgment.   Should such a record be presented in evidence against him, the conclusive objection would be, that he was no party to that record.   So when the assessment and warrant, upon which it was based, is presented to him for payment, or in evidence, he can say : " I am no party to that record.   I am neither named in it, nor am I made a party as an unknown owner—the only modes known to the law by which I can be made a party.   Smith is the only party affected."   In this case, Davis, if he examined the assessment and warrant, did not find an assessment to which he was a party, or a warrant which ran against him, or that could affect him.   He did not perceive that he was in any way aggrieved.   As the proceedings did not affect him, he had no objection to them. He is, therefore, not in the category of those who were required to appeal.   Had he been named in, or made a party to, the assessment, and more than his share had been imposed on him, or had he been assessed before the contract was fully performed, as was claimed to be the case in *Emory* v. *Bradford*, he would have been aggrieved and had some ground for complaint.   It would then have been incumbent on him to appeal, or to submit to the unjust apportionment, or premature assessment.   But why should he be called upon to complain, or find fault with an assessment to which he was no party at all, and by which he was, consequently, not affected ?   It is preposterous to say that his remedy is by appeal, when he has in no respect been injured, and stands in no need of a remedy.   The assessment upon its face is not against him.   He is no party to it.   He does not need to have it corrected, modified or vacated.   He is sim-

ply a stranger to it. Those who have an interest in making him a party to it, and of having an assessment made against him, have some interest in having it corrected or modified, and may have grounds of complaint of the omission of his name—may have grounds for feeling aggrieved—but he has none. The position of the petitioner substantially amounts to this: Under the provisions of the statute, any party aggrieved, or making any objection to the correctness of the .street assessment, is authorized to appeal and have it corrected. If he does not appeal, the assessment is conclusive. Davis is not assessed at all. He is aggrieved, and has good ground of complaint, because he is not assessed ; and, because he is not assessed, the assessment is incorrect and illegal as to him. He is, therefore, bound to appeal for the purpose of having himself assessed, and if he does not avail himself of this, his only remedy, he is assessed already, and the assessment is conclusive. We are unable to perceive the force of this logic, or to find any inconsistency between the decision in *Smith* v. *Davis* and this case, or any of these cases, and *Emory* v. *Bradford*. To us, the difference between the position of Davis and Smith appears obvious, and is this : Davis had no grievance requiring redress, and stood in no need of a remedy, while Smith was aggrieved, required, and had, a remedy, but did not pursue it.

The position maintained in the petition for rehearing was taken in the brief of counsel on the former argument, but its fallacy seemed so palpable to our minds that we did not think it required any special notice. It is now, however, so earnestly pressed by counsel of more than ordinary ability and candor, that we are bound to believe they are serious, and have some confidence in it, and we feel called upon to somewhat fully present the view impressed upon our minds.

Rehearing denied.

Mr. Justice RHODES and Mr. Justice SHAFTER expressed no opinion on petition for rehearing.