CITY OF ST. LOUIS, Respondent, *v.* CHARLES SPECK ET AL., CHARLES BLANK, Appellant.

### June 19, 1877.

The assessment of benefits against one whose ground is not taken for the street opened is not authorized by the act approved February 22, 1875 (Sess. Acts 1875, pp. 319–324), providing for the opening of streets in the city of St. Louis by proceedings before the land commissioner.

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*

H. B. WILSON, for appellant: The act of February 22, 1875, under which the proceeding was had, does not provide for the *extension* of a street, and the court had no power to assess appellant for any such purpose. — *Smith* v. *City of Toledo*, 24 Ohio St. 126. See Swan & S. Ohio Stat. 834. And the law providing, or attempting to provide, for such assessments must be construed *stricti juris*. Nothing will be taken by implication or intendment. — *Smith* v. *Cofran*, 34 Cal. 310; *Hopkins* v. *Mason*, 61 Barb. 469; *Hoyt* v. *City of East Saginaw*, 19 Mich. 39; *Culbertson* v. *City of Cincinnati*, 16 Ohio, 574.

LEVERETT BELL, with E. T. FARISH, for respondent: Property taken for the proposed improvement is acquired by the right of eminent domain; but the assessment of benefits upon property in the vicinity, to contribute towards payment for the property so taken, comes under the head of taxation. — *Garrett* v. *City*, 25 Mo. 505; *Uhrig* v. *City*, 44 Mo. 459; 2 Dill. on Mun. Corp., sec. 481. The Legislature may authorize the entire expense to be assessed upon lots fronting on the street to be opened, or upon other property in addition. — 2 Dill. on Mun. Corp., sec. 481; *The People* v. *Mayor*, 4 Comst. 419. And it may determine the district to be taxed, or it may refer the matter to appraisers for determination. — Cooley on Tax. 447 *et seq.*

BAKEWELL, J., delivered the opinion of the court.

This is a proceeding under the act of the General Assembly, approved February 22, 1875 (Sess. Acts 1875, pp. 319, 324), providing for opening streets in the city of St. Louis. Under that act, certain ordinances of the city were passed providing for the extension of Autumn Street. The persons whose lands were to be taken for this purpose were notified, according to the provisions of the law, and appeared before the land commissioner, who thereupon, in accordance with section 3 of the act, appointed appraisers, who examined the premises to be taken and the lands affected

by the improvement, appraised damages to the owners of the property to be taken and determined the limits specially benefited by the improvement, and ascertained the boundaries of the different parcels of real estate embraced in those limits, and the names of the owners, and assessed benefits to the city $1,500. They also assessed benefits to the owners of the land to whom damages had been allowed, and then assessed benefits to the owners of property within the limits defined whose lands were not to be taken for the improvement. Appellant Blank was one of this class, and he was assessed $65. The damages and benefits were made by the appraisers exactly to balance one another; and were fixed at $14,400 for damages, and the same sum for benefits.

When the report of the appraisers was returned, a time was fixed for filing exceptions, and appellant Blank then, for the first time, received notice of the proceedings. He then filed exceptions to the report, for the following reasons:

" 1. Because the land commissioner has no jurisdiction of said appellant.

" 2. Because the act of the General Assembly of February 22, 1875, under which said proceeding is had, is unconstitutional, in that it authorizes benefits to be assessed against appellant without notice thereof, and without affording him opportunity to be heard, or defend against the same; and also in that it deprives appellant of his constitutional right of trial by jury.

" 3. Because appellant was not notified of the assessment until after it was made, and therefore has not had his day in court, and no judgment can be entered against him.

" 4. Because the opening of said street is not a benefit to appellant.

" 5. Because it is an injury to appellant.

" 6. Because the damages allowed for property taken for said street, to the owners thereof, is excessive."

The land commissioner overruled these exceptions and

approved the report of the appraisers ; and thereupon Charles Blank appealed to the Circuit Court.

In that court he moved to dismiss the entire proceeding, for the following reasons :

" 1. Because the appraisers, the land commissioner, and the Circuit Court have no jurisdiction of appellant, as none of his property is taken for the improvement, but is remote therefrom.

" 2. Because the appraisers and land commissioner have no jurisdiction of the subject-matter, there being no law in existence in this State authorizing the assessment against appellant."

And a stipulation was filed admitting that no part of the property of said Blank was to be taken for said improvement, and that no part of the same was fronting upon or adjoining said proposed improvement, though within the limits which the appraisers determined were especially benefited.

This motion was overruled, and the case came on for hearing in the Circuit Court; and evidence was introduced, by appellant, tending to prove that his property was not benefited, and on behalf of the city that it was benefited, and that the appraisement of damages and benefits was just and right; and thereupon the court overruled the exceptions, and confirmed the report of the appraisers.

In the course of the trial, appellant asked one of the witnesses to state the value of the property proposed to be taken for the street in question.,

On behalf of the city, this question was objected to as incompetent and irrelevant, and the court sustained the objection.

Motions for a new trial and in arrest of judgment were filed and overruled; and an appeal was duly taken by Charles Blank to this court.

At the time said Blank appealed from the judgment of the land commissioner, other parties, occupying the same

relation to the controversy, viz., parties whose property was included in the district and assessed with benefits, also appealed; but, by the stipulation before referred to, the determination of this appeal determines all the appeals in this matter.

Charles Speck, as an owner of the property taken for the street, is made a defendant; but he is not an appellant, nor do any of the owners of property taken for the improvement appeal.

The act of February 22, 1875, is substantially as follows:

Sec. 1. Provides that when an ordinance for establishment of street, etc., is adopted, land commissioner shall issue notice, stating general nature of improvement proposed to be made, with number and date of approval of ordinance therefor, and name of owners of property proposed to be taken, and a day and place when land commissioner will appoint appraisers to assess damages, etc. All persons named, and others interested in the real estate to be taken, may appear, and shall be considered parties thereto, and may object to those proposed for appraisers.

Sec. 2. Provides how notice shall be served, and publication made.

Sec. 3. Appointment of appraisers; their qualifications; the oath to be taken. Said appraisers "thereupon shall proceed, without unnecessary delay, to examine the premises sought to be taken for such improvement, and also to view and examine the lands affected by such improvement, and shall appraise the damages to the owners for their property to be taken, without reference to the projected improvement, and determine the limits especially benefited by such improvement, and ascertain the boundaries of the different parcels of real estate embraced in said limits, and the names of the owners thereof, so far as known; and thereupon assess to the city the amount of benefits to it from said improvements, and next charge to each of the owners of such

rights, interests, and estates in the said parcels of ground, respectively, as damages are allowed for under this act, the amount of benefit thereto from said improvement, stating the name of the owner, when known, and when not known, stating the same.'' Appraisers to file a report; what it shall contain ; to be filed at a time to be appointed by the land commissioner for that purpose. Upon the report being filed, land commissioner to appoint a time and place when, within ten days thereafter, exceptions to the damages and benefits, or to any prior irregularities or defects in the proceedings, may be filed; and land commissioner shall notify owners of real estate charged with benefits, who have not appeared in the proceeding, of said time and place, in the same way and manner as provided for parties whose property is taken for the improvement. Subsequently said exceptions to be heard on evidence, and determined by land commissioner.

Sec. 4. If appraisers shall report that benefits to property-owners and city at large are insufficient to meet damages assessed, the land commissioner shall dismiss the proceeding. Benefits shall be a lien on the property charged. In every case where exceptions are filed, appeal may be taken ; the reversal shall affect only the case embraced in the appeal, and no party shall be allowed to object or except to the proceedings on account of any defect or irregularity in the case of any other party.

Sec. 6. Costs of proceedings ; how provided for.

Sec. 7. Special tax-bills to be made out against all parties charged with benefits, and if not paid within thirty days after notice thereof is given, land commissioner shall render judgment in favor of city against the owner, so far as known, of each lot or parcel of ground charged with benefits, and in case the owners be unknown, then against the property, etc., upon which execution shall issue, etc.

Sec. 8. Provides for a case where the ownership of property condemned is in controversy.

Sec. 9. Appraisers authorized to compromise with owners of property to be taken.

Sec. 10. Duties of city engineer.

Sec. 11. Powers of land commissioner.

Sec. 12. The title of the cause.

Sec. 13. Act to take effect.

No property belonging to appellant, or in which he has any interest, is taken for the proposed street, but a portion of his property lying within the district determined by the appraisers as especially benefited by the opening of Autumn Street is assessed benefits in this proceeding. Appellant claims that the act makes no provision whatever for an assessment of benefits unless some part of the property assessed is taken for the street.

The act provides for assessing benefits against "each of the owners of such rights, interests, and estates in said parcels of ground, respectively, as damages are allowed for under this act." But damages are allowed for no ground not taken for the street. It would seem, therefore, to be quite clear that benefits cannot be assessed against one whose ground is not taken for the street, and as appellant's ground was not taken, that benefits cannot be assessed against him.

It is true that sections 4 and 7 provide that benefits shall be a lien upon the property charged, and that special tax-bills shall be made out against the parties charged with benefits; and that it would appear, therefore, that the framer of the bill intended to insert a provision for charging benefits against property in the district declared and defined as benefited by the appraisers, or else that such a provision was in the bill as originally drafted, and was omitted in its passage through the Legislature, without any change being made; thus the clauses of the bill which, as respondent claims, become meaningless by the omission. But the fact remains that the bill contains no provision authorizing the assessment of benefits against those whose property is not taken for the street. It may be an instance of careless

legislation, and that the plain construction of the law, according to its terms, puts an end, as respondent suggests, to all pending proceedings to establish streets, alleys, and sewers in the city of St. Louis. If this be so, it is a great evil; but it is one which we are powerless to remedy, since our powers are limited under the Constitution, and they do not extend to the making of laws to meet an emergency; and to construe this law against its plain declarations, to construe it so as to uphold the present proceeding, would be to insert an important clause which is wholly absent.

It is true that the spirit as well as the letter of a statute must be respected; and where the whole context of a law demonstrates a particular intent of the Legislature to effect a certain object, some degree of implication may in some cases be called in to effect that object. But if the design and intent of the framers of a bill can in any case be made to prevail over its letter, it must be when that design can be indisputably ascertained; where it is a question of correcting a clear clerical mistake, such as the omission or insertion of the negative particle in one clause contrary to the whole scope and evident meaning of the bill, or the correction of an ungrammatical construction. The rule for the interpretation of statutes is, in this respect, like the rule for the interpretation of contracts. Where the meaning is clear, courts will not stick in the letter. A promise *not* to pay has been interpreted to mean a promise to pay; and the word " pounds " has been inserted after the word " thousand " in construing promissory notes. Byles on Bills, 6. But in these cases the meaning was clear. Courts have never undertaken to make contracts, or to make statutes. And in modern times, since the law-makers have abandoned the old conciseness of language which distinguished the earliest statutes, the courts have become more and more cautious not to make laws by construction. " Words cannot be inserted," says Tindall, C. J., in *Everett* v. *Mills*, 4 Scott (N. C.) 531. " It is the duty of all courts to confine

themselves to the words of the Legislature, nothing adding and nothing diminishing."

This principle of interpretation is illustrated by the action of the English courts in their interpretation of what was known as the "Apprentice Act," which provided that when a master was cruel to his apprentice, the apprentice might be discharged. The scope of the act was manifestly humane, and it was intended as a benefit to the apprentices. Its practical effect was that masters who had received large premiums with apprentices treated them harshly, that they might retain the premium and be freed from the burden. The courts were strongly tempted to interpret the act according to its spirit, and to require a return of the premium when they ordered a discharge of the apprentice under the act; but they decided that this would be a dangerous violation of settled principles of interpretation of laws, and, as the act was silent on this subject, they left the matter to be remedied by the legislature. *East* v. *Pell*, 4 Mee. & W. 665.

"It is, in my opinion, all-important," says Coleridge, J., for the court, "in construing modern statutes, to act on the principle of giving full effect to their language and of declining to mould that language." *King* v. *Poor Law Commissioners*, 6 Ad. & E. 7. Courts must not, in order to give effect to what they may suppose to be the intention of the Legislature, put upon the provisions of a statute a construction not supported by the words. If the words are incapable of meaning, the courts cannot supply one. Potter's Dwar. on Stat. 204. But especially must a statute by the authority of which a man is divested of property be strictly construed. And so it is said of laws by which the State exercises the taxing power of eminent domain. *Striker* v. *Kelly*, 2 Denio, 323; *Sharp* v. *Speir*, 4 Hill, 76; *Powell* v. *Tuttle*, 3 N. Y. 396; 34 Cal. 310; 61 Barb. 469; 19 Mich. 39; 16 Ohio, 574. "A corporation," says Bronson, J., delivering the opinion of the court in *Sharp* v.

*Speir*, 4 Hill, 76, " must show a grant, either in terms or by necessary implication, for all powers it attempts to exercise ; but especially must this be done when it claims the right, by taxing or otherwise, to divest individuals of their property without their consent."

Whether the Legislature intended in this act to confer the power to assess benefits to the lands not taken, we cannot know ; but it is clear that there are no words in the act that confer any such power. Such words may have been omitted from the act by accident, in the hurry of legislation ; they may have been designedly stricken out, and corresponding changes overlooked in the haste of passing the bill ; or there may never have been such words in the act, in any of the phases through which it may have passed before final adoption. The appraisers are authorized to fix the limits specially benefited, and to assess for benefits the property upon which damages are allowed, but they have no further power, under this law, as to assessing benefits. This seems absurd to respondent, and he desires us, in effect, to change the law. As we have said, we cannot do so.

This disposes of the case, and makes it wholly unnecessary to consider the further questions of notice and the alleged error in the exclusion of testimony.

The judgment of the Circuit Court is reversed and the cause remanded. All the judges concur.